**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DEXTER WILLIS,

                         Plaintiff,

        - v -                              Civ. No. 9:04-CV-1176
                                            (DNH/RFT)

MICHAEL NALLY; MICHAEL RAY;
CHESTER; SULLIVAN; MARY VALLEY;
RICHARD GUINEY; REX DASCHLE; LEPO;
ROY; E. SWEATT; D. MARIN; USA,

                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

DEXTER WILLIS
Plaintiff, *Pro Se*
140 Menahan St.
3-E
Brooklyn, NY 11221

HON. ANDREW T. BAXTER                WILLIAM H. PEASE
Acting United States Attorney for the       Assistant United States Attorney
Northern District of New York
Attorney for Defendants
100 South Clinton St.
Syracuse, NY 13261-7198

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

       *Pro se* Plaintiff Dexter Willis brings this Complaint, pursuant to 42 U.S.C. §§ 1983, 1985,

*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the

Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671 *et seq*., alleging that (1) his removal from

a prison job after receiving a false incident report violated his due process rights because he never

received a hearing on that report, Dkt. No. 5, Am. Compl. at ¶¶ 18-29 & 44; (2) Defendants

conspired to retaliate against Plaintiff by filing a false incident report against him, which led to his removal from a prison job with UNICOR,[1] *id*. at ¶¶ 43 & 53; (3) the Federal Correctional Institute (FCI) Ray Brook staff did not provide him adequate medical care, prescribed him medicine that caused him physical harm, and refused his requests to see an outside specialist about his abdominal pain in violation of his Eighth Amendment rights and the FTCA, *id*. at ¶¶ 31-33, 37-42, & 45; and (4) Defendants conspired to deprive him of the medical attention he needed in violation of 42 U.S.C. § 1985, *id*. at ¶¶ 43, 46, 48-49, & 52.[2]

Defendants Michael Ray, Mary Valley, and Richard Guiney move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]   Dkt. No. 28.   Plaintiff has not filed a response in opposition to the Motion.   Originally, Plaintiff's response was due by April 8, 2008. Dkt. No. 28.   By an Order dated June 11, 2008, this Court *sua sponte* extended Plaintiff's time to respond to the Defendants' Motion until July 15, 2008, but that Order was returned to the Court as undeliverable.   Dkt. Nos. 29-30.   The Court then issued an Order directing Plaintiff to submit his current address to the Court within thirty (30) days of that Order lest his Complaint be dismissed for failure to keep his address updated pursuant to the Local Rules of the Northern District of New York.   Dkt. No. 31.   Thereafter, a Status Report was filed by the Defendants' attorney indicating that Plaintiff had previously sent Defendants a letter informing them of his new address in Brooklyn,

---

[1] UNICOR Industries, Inc., is a corporation that provides voluntary work opportunities for federal prison inmates.  Information available at www.unicor.gov.

[2] Plaintiff also makes reference to 18 U.S.C. §§ 241, 242 (criminal statutes) & 4013(a)(2) (which gives the United States Attorney General authorization to make payments from funds appropriated for Federal prisoner detention for medical care and necessary guard hire).  These statutes are not applicable to Plaintiff's civil claims and will be disregarded by the Court.

[3] Defendants Michael Nally, Chester, Sullivan, Rex Daschle, Lepo, Roy, E. Sweatt, D. Martin, and USA have not been served with process.  *See generally* Dkt. Rep.  We discuss this issue in Part II.E, *infra*.

New York; however, Plaintiff never sent the Court an updated address.  Nonetheless, Plaintiff's address was duly updated, and on October 9, 2008, the Court directed Defendants to re-serve their Motion to Dismiss on Plaintiff at his Brooklyn address.  The following day a Certificate of Service was filed indicating that Plaintiff was served via the post.  Dkt. Nos. 33-34.  That same Order directed Plaintiff to file and serve any opposition to the Defendants' Motion on or before November 14, 2008, and warned Plaintiff that his failure to respond "**may, if appropriate, result in the granting of Defendants' Motion, in which [case] there will be no trial**."  Dkt. No. 33, Order at p. 2 (emphasis in original) (citing N.D.N.Y.L.R. 7.1 (b)(3)).  To date, Plaintiff has not responded to the Defendants' Motion, and the Court notes that it has not received any correspondence whatsoever from the Plaintiff since July 20, 2007.  *See generally* Dkt. Rep.

For the reasons that follow, it is recommended that the Defendants' Motion be **granted**.

## I.  BACKGROUND

In accordance with the applicable standard to be applied when considering a Motion to Dismiss, the following facts are derived from the Plaintiff's Amended Complaint, which will be construed in a light most favorable to Plaintiff, the non-moving party.

On or about April 23, 2003, Plaintiff reported severe abdominal pains to his work supervisor, Defendant Richard Guiney, who granted Plaintiff's request to leave work and go to the medical department.  Am. Compl. at ¶ 19.  During that time, Plaintiff was suffering from Irritable Bowel Syndrome, which caused him severe abdominal pains.  *Id.* at ¶ 18.  Upon arrival at the medical department, Plaintiff was refused medical treatment by Defendant D. Marin because no prior call had been placed informing the medical department of Plaintiff's impending visit.  *Id.* at ¶ 20.

Plaintiff then went to his unit and reported the situation to the unit officer, Debra Wilcox.[4]  Wilcox called the medical department to see if Defendants D. Marin and E. Sweatt were able to see Plaintiff and informed them that Plaintiff appeared to be in severe pain.  *Id.* at ¶ 22.  Wilcox later told Plaintiff that someone in the medical office would call her back if Plaintiff could be seen by one of the physicians.  *Id.*

Shortly thereafter, Defendant Mary Valley, Plaintiff's work supervisor, called the unit to see if Plaintiff was there; Wilcox informed Valley that Plaintiff was in the unit and awaiting a call from the medical department to see if he would or would not be seen by a physician.  *Id.* at ¶ 23.  However, the medical department never called back in response to Plaintiff's request to see a physician.  Defendant Valley then wrote an Incident Report against the Plaintiff for being in an unauthorized area and lying to a staff member, which was served on Plaintiff at 8:20 p.m. on that same date, April 23, 2003.  *Id.* at ¶ 24.  The Incident Report, which Plaintiff attached to the Amended Complaint, states that

> [a]t approximately 2:45 p.m., Rex Dashnaw informed me that Inmate Willis, Dexter, Reg. No. 18380-057, was in his unit.  I spoke with Officer Deborah Wilcox and she confirmed that he was in the unit.  The inmate told her that he told Richard Guiney that he was going to the unit to get his medication.  Mr. Guiney stated to me that Inmate Willis told him when he left UNICOR that he was going to Medical.  Mr. Guiney called Health Services and learned that Inmate Willis did not report to Health Services.  Inmate Willis provided false information to Mr. Guiney and went to the unit without authorization.

Am. Compl., Incident Rep., dated Apr. 22, 2003.[5]

On the night of April 23, 2003, Plaintiff noticed that his UNICOR job had been changed on

---

[4] Debra Wilcox is not a named Defendant in this action.

[5] Plaintiff alleges the events described above occurred on or about April 23, 2003, however, the allegedly false Incident Report is dated April 22, 2003.  For the purposes of this Motion, it matters not whether the events described in the Amended Complaint occurred on April 22 or 23, 2003.

the callout list, a list that indicates when an inmate has been reassigned to a new job. *Id.* at ¶ 26. On April 24th, Plaintiff asked his Unit Manager, Defendant Sullivan, about the Incident Report, who responded that it had been taken care of and he need not worry about the incident or his job in UNICOR. *Id.* at ¶ 28. Plaintiff never received a hearing on the Incident Report, but his employment with UNICOR was nonetheless terminated. Defendants Mr. Lepo, Mr. Roy, and Mr. Chester placed a memorandum in Plaintiff's file indicating that Plaintiff was not to be employed by UNICOR within the Federal Bureau of Prisons (BOP), which was agreed to by Defendants Nally, the Warden, and Mickey E. Ray. *Id.* at ¶ 29.

While at FCI Ray Brook, between August 25 and October 25, 2003, Plaintiff was seen by several medical physicians for his severe abdominal pains and cramps, but he was never properly diagnosed for his illness. *Id.* at ¶ 30. Plaintiff complained about his pain to the medical staff and requested to be seen by an outside specialist, to no avail. *Id.* at ¶ 32. Plaintiff was very sick on several occasions, prompting the unit officer to call the emergency unit of the medical department in FCI Ray Brook to attend to Plaintiff's severe abdominal pains. *Id.* at ¶ 33. From August 2000 until his transfer from FCI Ray Brook, he has submitted repeated sick call requests and filed several grievances requesting that tests be done by an outside medical specialist. *Id.* at ¶ 34.

After several years, Plaintiff still has not received care from an outside abdominal specialist. *Id.* at ¶ 37. Plaintiff suffers from great abdominal pain and cannot eat solid meals without throwing them up or passing bowels quickly thereafter. *Id.* at ¶ 38. In addition, Plaintiff was prescribed medications that caused him physical harm. *Id.* at ¶ 41. Plaintiff fears that if he is not promptly seen by an outside specialist, he risks the onset of a permanent disability. *Id.* at ¶ 39.

## II.  DISCUSSION

### A.  Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 127  S. Ct. 1955, 1974 (2007).  Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted).  Additionally, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." *Green v. New York State Dep't of Corr. Servs.*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003) (internal quotation marks and citations omitted) (alterations in original).

Pleadings submitted by *pro se* litigants "should be 'construed liberally,' *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam)," and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations[,]'" *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997)).  A "dismissal on the pleadings is never warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Phillips v. Girdich*, 408 F.3d at 128.

Additionally, although a court considering a motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, the complaint includes any written instrument attached

to it as an exhibit and any statements or documents incorporated into it by reference. *Paulemon v. Tobin,* 30 F.3d 307, 308 (2d Cir. 1994). The court may also consider documents annexed to the movant's papers which, although not annexed to the complaint, plaintiff either had in [his] possession or had knowledge of and upon which [h]e relied in bringing this suit. *Cortec Indus. V. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (cited in *Mills v. Garvin*, 2001 WL 286784, at *3 (S.D.N.Y. Mar. 2, 2001)).

In this case, the Plaintiff has attached to his Amended Complaint copies of the April 2003 Incident Report and of his various administrative requests and appeals related to that Report and his removal from the UNICOR work program.[6] Am. Compl, Attachs. These attached documents shall be treated as exhibits and are incorporated into the Amended Complaint by reference. *Paulemon v. Tobin,* 30 F.3d at 308.

The moving Defendants have attached to their Motion the Declaration of Cheryl Magnusson, a legal assistant for the BOP, which itself has attached to it copies of documents retrieved through the BOP's computer database, known as "SENTRY." These documents include copies of Plaintiff's: (1) Administrative Remedy Generalized Retrieval Screen, which is in sum and substance a list of all administrative remedies filed by Plaintiff including a brief description of the nature of each complaint; (2) Public Information Inmate Data; (3) History Work Detail; (4) Radiological Reports dated June 12, 2002, December 16, 2004, April 4, 2005, and May 23,  June 12, and September 25, 2006; (5) Administrative Remedies related to his termination from UNICOR; and (6) Chronological Disciplinary Record. Dkt. No. 28, Mot. to Dismiss, Cheryl Magnusson Decl., dated

---

[6] Plaintiff has also attached a copy of the callout list or "Change Sheet," which informed him that his employment at UNICOR had been changed, and a letter from the Federal Bureau of Prisons offering a settlement regarding his Administrative Tort Claims of wrongful termination and denial of proper medical treatment. Am. Compl., Attachs., Change Sheet, dated Apr. 23, 2003 & Settlement Lt. from BOP, dated Apr. 8, 2004.

Mar. 7, 2008, Exs. A-H.

With respect to the aforementioned documents attached to the Defendants' Motion, the Court will consider only documents related to Plaintiff's Administrative Remedies for the purposes of addressing the Defendants' Motion. Particularly with respect to the issue of exhaustion, it has been held that "an inmate plaintiff necessarily refers to and relies on documents exhibiting proof of exhaustion. Because the exhaustion issue is an integral part of a prisoner's claim, the Court may refer to materials outside of the complaint on a 12(b)(6) motion in determining whether a plaintiff exhausted." *Smart v. Goord*, 441 F. Supp. 2d 631 (S.D.N.Y. 2006) (citing cases). Moreover, Plaintiff alleges in his Amended Complaint that he has exhausted administrative remedies on all his claims, Am. Compl. at ¶ 17; therefore, documents related to exhaustion are "integral to [P]laintiff's claims" and can be considered by the Court, *Martinez v. Williams*, 186 F. Supp. 2d 353, 355 (S.D.N.Y. 2002) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)).

## B. *Bivens* Claims

### 1. *Bivens* Standard

*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents. *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981) (noting that a *Bivens* action is a judicially-created remedy); *see also Carlson v. Green*, 445 U.S. 14, 18 (1980) ("Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities. *See Polanco v. United States Drug*

*-8-*

*Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998).   In order to state a *Bivens* claim, a plaintiff must allege a constitutional deprivation by defendants acting under color of federal law.  *Soichet v. Toracinta*, 1995 WL 489434, at *3 (S.D.N.Y. Aug. 16, 1995) (citing *Barbera v. Smith*, 654 F. Supp. 386, 390 (S.D.N.Y. 1987)).   Generally, case law under 42 U.S.C. § 1983 applies to *Bivens* cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*, 643 F.2d at 84).

### 2. *Exhaustion*

Defendants assert that Plaintiff failed to exhaust his available administrative remedies regarding his allegation that Defendants were deliberately indifferent to his medical needs.  The Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), restricts inmates from bringing an action under federal law "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Plaintiffs properly exhaust their claims when they "compl[y] with the system's critical procedural rules." *Woodford v. Ngo*, 126 S. Ct. 2378, 2388 (2006).  Failure to exhaust must be plead as an affirmative defense, which the Defendants have done in this case. *Jones v. Bock*, 127 S. Ct. 910, 918 (2007).

The United States Bureau of Prisons (BOP) has a three-tiered administrative remedy system. 28 C.F.R. §§ 542.13-542.15.  At the first tier, an inmate must first present an issue informally to staff, the second requires an inmate to file a written remedy request with the Warden, and the third tier requires an inmate to file an appeal with the appropriate Regional Director and then with the General Counsel.  *Id.*, *see also Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir. 2007).

A review of the available records attached to Defendants' Motion reveals that Plaintiff has filed twenty-three administrative remedies during his incarceration with the BOP, though not one of them concerns his claims of medical indifference on the part of FCI RayBrook Staff. Magnusson Decl., Ex. D, Pl.'s Admin. Remedy Gen. Retrieval Screen.

Therefore, it recommended that Plaintiff's medical indifference claims brought under *Bivens* be **dismissed** for failure to exhaust.[7]

### 3. *Removal from UNICOR*

#### a. Due Process Claim

Plaintiff alleges that he was denied due process because he was removed from his prison job with UNICOR after receiving a false incident report and never received a hearing on that report. Am. Compl. at ¶¶ 18-29 & 44. However, federal prisoners do not have a constitutionally protected liberty or property interest in participating in UNICOR. *See Onwuazombe v. Dodrill,* 2008 WL 1758641, at *4 (S.D.N.Y. Apr. 16, 2008) (citing *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49-50 (5th Cir. 1995) for the proposition that prisoners do not have a constitutionally protected liberty or property interest in participating in UNICOR); *see also Karacsonyi v. Radloff*, 885 F. Supp. 368, 370 (N.D.N.Y. 1995) (same). Therefore, Plaintiff had no due process right to a hearing before being removed from his position in UNICOR, and this claim should be **dismissed**.

#### b. Retaliation

---

[7] Were Plaintiff to have opposed the Defendants' affirmative defense of failure to exhaust, we would have inquired as to whether: (1) administrative remedies were available to Plaintiff; (2) defendants have forfeited this affirmative defense by failing to raise or preserve it, or if the defendants should be estopped from asserting failure to exhaust because they somehow inhibited the inmates' exhaustion; and (3) any special circumstances exist that could justify Plaintiff's failure to properly exhaust. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). However, because Plaintiff failed to respond to the Defendants' Motion, no such inquiries are necessary. *Id.* (stating that three step inquiry is necessary only "where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies").

Plaintiff alleges that the Defendants retaliated against him by filing a false Misbehavior Report that led to his termination from UNICOR. Am. Compl. at ¶¶ 43 & 53. Defendants have not addressed this claim, however, notwithstanding that omission, under 28 U.S.C. § 1915(e)(2)(B)(ii), this Court has the power to review Plaintiff's Complaint for failure to state a claim *at any time*. *See, e.g.*, *Zimmerman v. Burge*, 2008 WL 850677, at *7 (N.D.N.Y. Mar. 28, 2008) (noting that "even where a defendant has not requested dismissal based on a failure of the plaintiff to state a claim upon which relief may be granted, a district court may, *sua sponte*, address whether a pro se prisoner has failed to state a claim[.]") (citing 28 U.S.C. § 1915(e)(2)(B)(ii)).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

In this case, even assuming that Plaintiff's participation in UNICOR was constitutionally protected conduct and that the Defendants engaged in adverse actions against Plaintiff by removing him from UNICOR, Plaintiff has failed to allege any causal connection between his participation in UNICOR and the filing of the allegedly false Misbehavior Report. In other words, Plaintiff has failed to state any reason why the Defendants would be motivated to retaliate against him. Therefore, Plaintiff has failed to state a claim and it is recommended that his retaliation claim be **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

c. False Misbehavior Report

*-11-*

To the extent Plaintiff intended to state an independent cause of action based on the Defendants' alleged filing of a false Misbehavior Report against him, that claim is also without merit because there is "no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Gill v. Riddick*, 2005 WL 755745, at *7 (N.D.N.Y. Mar. 31, 2005).  Therefore it is recommended that this claim be **dismissed**.

### 4. *Conspiracy Claims*

Plaintiff alleges that the Defendants conspired to file a false Misbehavior Report against him in order to have him removed from the UNICOR program, and conspired in failing to provide adequate medical care in violation of 42 U.S.C. § 1985.  Am. Comp. at ¶¶ 43, 48-49 & p. 13.  *Id.* at ¶¶ 48-49.

The third subsection of 42 U.S.C. § 1985, which is the only part of this statute applicable to the claims made in this case, states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the Untied States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with "(3) an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's

person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted).  "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dept. of Corr. Servs.*, 115 F. Supp. 2d 307 (N.D.N.Y. 2000) (citations omitted).

In this case, Plaintiff has failed to allege any racial or class-based invidious discriminatory animus on the part of the Defendants.  Because the Amended Complaint is devoid of any allegation of racial or class-based animus, Plaintiff has failed to state viable § 1985 conspiracy claims.  *See Lewis v. Goord*, 2008 WL 902179, at *3 (N.D.N.Y. Mar. 31, 2008) (dismissing a § 1985 claim when Plaintiff failed to allege racial or class-based animus) (citation omitted).  Therefore, it is recommended that Plaintiff's conspiracy claims under § 1985 be **dismissed.**

### C.  FTCA Claim

Plaintiff raises a negligence claim under the FTCA, 28 U.S.C. §§ 1346 and 2671 *et seq.*, with respect to the medical care he received.  The FTCA constitutes a Government waiver of the defense of sovereign immunity in certain circumstances, but it does not itself create any causes of action. *See Dorking Genetics v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996).  Adopted by Congress in 1946, the FTCA gives federal district courts jurisdiction over civil actions against the United States for money damages over loss of property, personal injury, or death caused "by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]"  28 U.S.C. § 1346(b)(1).  The Government can be held liable if "a private person would be liable to the claimant in accordance with the law of the place where the act

*-13-*

or omission occurred." *Id*.

The FTCA does not waive the government's sovereign immunity for federal constitutional tort claims. *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). As such, a valid claim under the FTCA must be based on the applicable state law where the act or omission occurred. 28 U.S.C. §§ 1346(b) & 2674; *Mortise v. United States.*, 102 F.3d 693, 696 (2d Cir. 1996). To the extent that Plaintiff brings an Eighth Amendment deliberate indifference claim under the FTCA, that claim must fail because the government has not waived its sovereign immunity against such a claim. Because the alleged acts and omissions giving rise to Plaintiff's negligence claim occurred at FCI Ray Brook, which is located in New York, we must apply New York law to analyze that tort claim. *Mortise v. United States*, 102 F.3d at 696.

"Under New York law . . . a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F. 3d 111, 114 (2d Cir. 2000) (internal quotation marks and citations omitted).

By statute, the BOP has the duty to "provide suitable quarters and provide for the safekeeping, care, and subsistence" of all inmates in its custody. 18 U.S.C. § 4042(a)(2); *see also United States v. Muniz*, 374 U.S. 150, 164-65 (1963) (stating that the BOP's duty of care is fixed by 18 U.S.C. § 4042, not any state rule). The aforementioned statute creates a duty on the part of BOP to "exercise ordinary diligence or reasonable care to keep prisoners safe and free from harm." *Smith v. United States*, 207 F. Supp. 2d 209, 214 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). Thus, the first element of Plaintiff's negligence claim has been established.

Proceeding to the second element, breach of duty, Plaintiff alleges that Defendants failed to

provide adequate medical care for his abdominal pain, that he "has not received outside medical care from a abdominal/GI specialist . . . [nor] treatment for his severe abdominal illness [] and physical therapy," and that he was prescribed medications that caused him physical harm.  Am. Compl. at ¶¶ 37, 41-42, & 45.  These claims are conclusory.  Plaintiff has failed to provide any detail with respect to his medical need for a consultation with a specialist, and moreover, he admits to being seen by medical staff over fifty (50) times for his abdominal pain while at FCI Ray Brook.  *Id.* at ¶ 31.  Furthermore, Plaintiff does not make any specific allegations against any of the named Defendants regarding medical care.  Although a claim under the FTCA is necessarily brought against the United States, Plaintiff must still allege that the negligent or wrongful acts or omissions of the Government's employees constituted a breach of their duty to "exercise ordinary diligence and reasonable care" on his behalf.  *See Bell. Atl. Corp. v. Twombly*, 127  S. Ct. at 1958-9 (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level").  Because Plaintiff has failed to do so, it is recommended that this claim be **dismissed**.

### D. Supervisory Liability Claims

Plaintiff seeks supervisory liability against Defendants Michael Nally, Mickey E. Ray, D. Martin, Chester, and Roy, for their failure to enforce BOP policies.  Am. Compl. at ¶¶ 55-65.  Because we recommend that all of Plaintiff's underlying claims be dismissed, there is no basis upon which to hold these Defendants liable under a theory of supervisory liability.  Therefore, it is recommended that Plaintiff's supervisory liability claims be **dismissed**.

### E.  Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the

summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[8]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id.*

In this case, there is no indication that the Defendants Michael Nally, Chester, Sullivan, Rex Daschle, Lepo, Roy, E. Sweatt, D. Martin, and USA were properly served.  Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, because Plaintiff's claims lack merit, granting Plaintiff the opportunity to properly serve these unnamed Defendants would be futile.  Thus, it is recommended that Plaintiff's claims against these Defendants be **dismissed**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 28) be **granted**, and the Amended Complaint (Dkt. No. 5) be **dismissed**; and it is further

**RECOMMENDED**, that Plaintiff's retaliation claim be dismissed, *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

---

[8] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).


Date:   March 13, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-17-*